United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Eduardo E. Dimingo, Plaintiff,<br>v.<br>Midnight Xpress, Inc. and others,<br>Defendants. | )<br>)<br>) Civil Action No. 17-23010-Civ-Scola<br>)<br>) |

**Order on Defendants' Motion to Dismiss First Amended Complaint**

Plaintiff Eduardo Dimingo brings this suit for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), alleging that the Defendants failed to pay him overtime wages. This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, or, in the Alternative, Motion for Summary Judgment (ECF No. 28). For the reasons set forth below, the Court **grants in part** the Defendants' motion to dismiss, and **denies** the Defendants' alternative motion for summary judgment.

1. **Background**

The Court dismissed the Plaintiff's original complaint because it did not contain sufficient factual allegations to establish coverage under the FLSA. (Order, ECF No. 24.) The Plaintiff subsequently filed his First Amended Complaint, alleging that Defendants Midnight Xpress, Inc., JR Trucks Corp., APR Trucking, Inc., and United Transport Logistics, Inc. jointly employed him as a security guard from September 9, 2014 through July 28, 2017. (First Am. Compl. ¶¶ 3-6, 13, ECF No. 26.) The Plaintiff also alleges that Defendants Yanel Martinez and Anatella Martinez were "a corporate officer and/or owner and/or manager of the Defendant Corporations," and were also the Plaintiff's joint employers. (*Id.* ¶¶ 8-9.) The Plaintiff's job was to "guard the premises, including the said products that were regularly delivered to states outside of Florida, to prevent theft and other potential criminal activity." (*Id.* ¶ 16.) The First Amended Complaint asserts both individual and joint enterprise coverage. (*Id.* ¶¶ 17-19.)

The Defendants have moved to dismiss the First Amended Complaint, arguing that the Plaintiff has again failed to adequately allege coverage under the FLSA. In the alternative, the Defendants argue that they are entitled to summary judgment because the allegations in the First Amended Complaint establish that the Plaintiff is exempt from the FLSA because he is subject to the jurisdiction of the Secretary of Transportation.

## 2. Motion to Dismiss

### A. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). For purposes of Rule 12(b)(6), a court generally may not look beyond the pleadings, which includes any information attached to a complaint. *U.S. ex. Rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811 (11th Cir. 2015) (internal citations omitted).

### B. Analysis

The FLSA requires an employer to pay an employee "an overtime wage of one and one-half times his regular rate for all hours he works in excess of forty hours per week." *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011); *see also* 29 U.S.C. § 207(a). "In order to be eligible for FLSA overtime, however, an employee must first demonstrate that he is 'covered' by the FLSA." *Josendis*, 662 F.3d at 1298. This requires a showing that the jurisdictional prerequisite of "interstate commerce" exists in a given case, a showing that may be made one of two ways—enterprise coverage or individual coverage. *Id.* The Court will first address enterprise coverage, and will then address individual coverage.

*1. Enterprise Coverage*

An employee may show that his employer is subject to enterprise coverage by demonstrating that: (1) the employer has two or more employees regularly and recurrently engaged in commerce or in the production of goods for commerce, or has two or more employees regularly and recurrently handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) the employer is an enterprise whose annual gross volume of sales made or business done is not less than $500,000. *Scott v. K.W. Max Investments, Inc.*, 256 F. App'x 244, 248 (11th Cir. 2007); *Diaz v. Jaguar Rest. Grp.*, LLC, 649 F. Supp. 2d 1343, 1346 (S.D. Fla. 2009). In order to establish enterprise coverage, "[t]wo nominally separate businesses can be considered a joint enterprise." *Gonzalez v. Old Lisbon Restaurant & Bar L.L.C.*, 820 F.Supp.2d 1365, 1368 (S.D. Fla. 2011) (Goodman, Mag. J.). If a joint enterprise is found to exist, several employers may be simultaneously liable for the same FLSA violations. *Attai v. Delivery Dudes,* LLC, No. 15-62522, 2016 WL 828816, at *4 (S.D. Fla. Mar. 3, 2016) (Bloom, J.) (citations omitted). In order to establish joint enterprise coverage, a plaintiff must allege facts demonstrating that two or more businesses: (1) performed related activities, (2) through unified operation or common control, (3) for a common business purpose. *Gonzalez*, 820 F.Supp.2d at 1368 (citations omitted); *see also Donovan v. Easton Land & Development, Inc.*, 723 F.2d 1549, 1551 (11th Cir. 1984) (citations omitted).

The First Amended Complaint alleges that "[w]ith respect to the $500,000 threshold, Plaintiff intends to stack income to fullest extent allowable by law, under a joint enterprise theory . . ." (First Am. Compl. ¶ 19.) In support of the joint enterprise theory, the Plaintiff alleges that he received paychecks from Defendant Midnight Xpress, Inc. in 2014 and 2015, United Transport Logistics, Inc. in 2015 and 2016, JR Trucking Corp. in 2016, and APR Trucking, Inc. in 2016 and 2017. (*Id.* ¶ 14.) The Plaintiff alleges that Defendants Anatella and Yanel Martinez "regularly signed the Plaintiff's checks during the relevant period in relation to the various companies," and Yanel Martinez "held himself out as the owner of all of the companies." (*Id.* ¶¶ 14, 19.) Finally, the Plaintiff alleges that the Defendants provided delivery services to customers and delivered various products to out-of-state locations, and that "Defendants conducted the same type of business at the same location." (*Id.* ¶¶ 15, 18.)

These allegations are sufficient to establish that the Defendants operated through unified operation or common control. *Donovan*, 723 F.2d at 1552 (citing *Schultz v. Mack Farland and Sons Roofing Co.*, 413 F.2d 1296, 1301 (5th Cir. 1969)) ("The right to control that is inherent in ownership is determinative of the 'common control' test regardless of the extent to which the right to

control is exercised."). In addition, the allegations are sufficient to establish that the activities performed by the Defendants are "the same or similar," and thus are related for purposes of the joint enterprise analysis. *See id.* at 1551 (citations omitted) ("Activities are related when they are 'the same or similar' or when they are 'auxiliary and service activities.'"). However, the Plaintiff has failed to sufficiently allege that the Defendants performed these activities for a common business purpose.

In order to establish a common business purpose, "[m]ore than a common goal to make a profit" is required. *Donovan*, 723 F.2d at 1553 (citing *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362, 1366 (5th Cir. 1973)). Although the Plaintiff alleges in conclusory fashion that the related activities "are being done for a common business purpose," there are no specific factual allegations to support this conclusion. The fact that the Defendants each provided delivery services and each paid the Plaintiff is insufficient. *See Vignoli v. Clifton Apartments, Inc.*, 930 F.Supp.2d 1342, 1347 (S.D. Fla. 2013) (King, J.) (holding that allegations that the defendants each owned apartment buildings and had a common administrator were insufficient to establish joint enterprise coverage where the complaint contained no factual allegations "describing a common business purpose"); *Attai*, 2016 WL 828816, at *4 (holding that allegations that the plaintiff was employed by each defendant as a driver and that the defendants shared a root name was insufficient to establish joint enterprise coverage).

Indeed, the allegations in the First Amended Complaint tend to show that the Defendants were not engaged in a common business purpose, since the Plaintiff alleges that the Defendants were not all incorporated and actively conducting business at the same time. Specifically, the Plaintiff alleges that JR Trucks Corp. dissolved on March 14, 2017, and United Transport Logistics, Inc. became incorporated on April 23, 2017. (First Am. Compl. ¶ 19.) The First Amended Complaint also asserts that the Defendants are subject to successor liability. (*Id.* ¶ 21.) Finally, the Plaintiff's allegations that he received paychecks from Midnight Xpress, Inc. in 2014 and 2015, United Transport Logistics, Inc. in 2015 and 2016, JR Trucks Corp. in 2016, and APR Trucking, Inc. in 2016 and 2017 indicate that the entities were not all conducting business at the same time. (*Id.* ¶ 19.) It is implausible that the Defendants could have been engaged in a common business purpose, and consequently be simultaneously liable for the same FLSA violations, if they were not even actively conducting business at the same time.

The Plaintiff asserts that he "must be permitted discovery to explore joint enterprise matters thoroughly through the discovery mechanism." (Resp. 8, ECF No. 29.) However, an "insistence that discovery is required to determine

the corporate structure at work is immaterial . . . Although discovery will undoubtedly reveal a more intimate picture of the affiliation between the parties, the Plaintiff is, nevertheless, obligated to introduce a modicum of factual allegations, accepted as true, which allow for the conclusion that the various Defendants may be simultaneously liable." *Attai*, 2016 WL 828816, at *4 (citations omitted). Since the Plaintiff has not made any specific allegations to support his conclusion that the Defendants were performing delivery services for a common business purpose, the Court finds that the First Amended Complaint does not adequately allege joint enterprise coverage.

### 2. Individual Coverage

"An employee is subject to individual coverage if he is *directly* and *regularly* 'engaged in' interstate commerce." *Josendis,* 662 F.3d at 1315 (emphasis in original) (citing *Thorne v. All Restoration Servs. Inc.,* 448 F.3d 1264, 1266 (11th Cir. 2006)). Thus, an employee must allege that he was "directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.,* regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne,* 448 F.3d at 1266 (citations omitted). Courts have held that employees who guard premises and property used for interstate shipments are engaged in interstate commerce within the meaning of the FLSA. *See, e.g.*, *Russell Co. v. McComb*, 187 F.2d 524, 526 (5th Cir. 1951) (holding that night watchman who guarded the defendant's premises and property, including the interstate shipments loaded into freight cars and truck and a warehouse in which goods were prepared for interstate shipment, was covered by the FLSA).[1] Accordingly, the Plaintiff has sufficiently alleged individual coverage under the FLSA.

### 3. Motion for Summary Judgment

**A. Legal Standard**

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most

---

[1] The Eleventh Circuit has adopted, as binding precedent, all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### B. Analysis

The Defendants assert that summary judgment is appropriate because the Plaintiff is covered by the Motor Carrier Act ("MCA"), and is therefore exempt from the overtime provisions of the FLSA. The FLSA provides that its overtime provisions do not apply to "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service . . . ." 29 U.S.C. § 213(b)(1). The Secretary of Transportation "has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181–82 (11th Cir. 1991) (citations omitted). "Exemptions from the overtime provisions of section 207 are to be narrowly construed against the employer . . . The defendant must prove

applicability of an exemption by clear and affirmative evidence." *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992) (internal quotations and citations omitted).

Attached to the Defendants' motion are certificates from the U.S. Department of Transportation establishing that each of the Defendants held a permit to operate as a common carrier of property by motor vehicle in interstate commerce. (Mot. Ex. A, ECF No. 28-1.) The certificates establish that the Defendants are subject to the jurisdiction of the Secretary of Transportation. *Baez*, 938 F.2d at 182 (holding that the defendant was subject to the Secretary of Transportation's jurisdiction because the defendant held a permit from the Interstate Commerce Commission[2]). In response, the Plaintiff merely argues that "[s]ummary judgment is clearly premature without adequate discovery . . . ." (Resp. 12.) However, the Plaintiff has provided no case law to support this argument. In the face of the certificates, the Plaintiff was required to set forth specific facts showing that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 248 (citation omitted). The Plaintiff has not done so. Thus, the Court finds that there is no genuine dispute that the Defendants are subject to the jurisdiction of the Secretary of Transportation.

29 C.F.R. § 782.2(b)(2) describes the exemption as being applicable "to those employees and only those whose work involves engagement in activities consisting wholly or in part of a class of work which is defined: (i) As that of a driver, driver's helper, loader, or mechanic, and (ii) as directly affecting the safety of operation of motor vehicles on the public highways in transportation in interstate or foreign commerce within the meaning of the Motor Carrier Act." The regulation further provides that "[t]he jurisdiction of the Secretary of Transportation . . . relate to the safety of operation of motor vehicles only, and to the safety of operation of such vehicles on the highways of the country, and that alone." 29 C.F.R. § 782.2(e) (internal quotations and citations omitted); *see also McIntyre v. FLX of Miami, Inc.*, 2008 WL 4541017, at *6 (S.D. Fla. Oct. 8, 2008) (O'Sullivan, Mag. J.) (citations omitted) (courts "shall consider whether the activities of the employee affect the safety of operation").

The Defendants rely heavily on *Baez v. Wells Fargo Armored Serv. Corp.*, in which the Eleventh Circuit held that driver-guards, messenger-guards, and other guards who worked for a company that provided security armored truck pickup and delivery services were engaged in activities that directly affect the safety of operation of motor vehicles even though the employees' duties were performed entirely within the state of Florida. 938 F.2d at 181-182. The court noted that "the transported checks and other instruments were bound for

---

[2] The Secretary of Transportation has now been vested with the functions, powers, and duties of the Interstate Commerce Commission. *See* 29 C.F.R. § 782.0(c).

banks outside the state of Florida," and that an Interstate Commerce Commission report concluded that guards on armored bank trucks perform services which affect the safety of the operation of the vehicle. *Id.* (citing *Opelika Royal Crown Bottling Co. v. Goldbert*, 299 F.2d 37 (5th Cir. 1962)). The Interstate Commerce Commission report referenced in *Baez* categorized guards on armored bank trucks as "helpers," and concluded that "'the term 'helpers' . . . includes all employees, other than the drivers, who are required to ride on a motor vehicle when it is being operated in interstate or foreign commerce.'" *Opelika*, 299 F.2d at 43 (citations omitted).

The Defendants argue that the Plaintiff's allegations that he guarded premises and property involved in interstate shipments establish that he is covered by the MCA under *Baez*. (Mot. 15-16.) The Defendants also argue that the Plaintiff's allegation that he "handed invoices to the truck drivers as a regular part of his job" establishes that he was a loader. (First Am. Compl. ¶ 17.) However, the guards at issue in *Baez* performed their duties while riding on motor vehicles. The additional cases that the Defendants have cited in support of their position involved employees who spent at least part of their time loading trucks and assisting with deliveries. *See, e.g., Fletcher v. Grinnell Bros.*, 78 F.Supp. 339, 341 (E.D. Mich. 1948) (holding that garage watchmen who helped load defendant's trucks and assisted on deliveries as truck drivers' helpers were exempt from the FLSA). The only case that the Defendants have cited in which an employee who did not load shipments onto trucks or ride on motor vehicles was found to be covered by the MCA involved a dispatcher whose duties "included calling mobile mechanics for stranded . . . truckers when mechanical breakdowns and flat tires stranded the drivers' vehicles or impeded their safe operation." *McIntyre*, 2008 WL 4541017, at *7. Thus, the dispatchers' duties directly affected the safety of the trucks while they were traveling in interstate commerce.

Although the Plaintiff alleges that he was involved in guarding the Defendants' premises and the shipments that were bound for transportation to locations outside of Florida, he does not allege that he performed those duties while riding on the trucks themselves, nor do any of the allegations indicate that his duties affected the safety of the trucks while they were operating on highways. Moreover, handing an invoice to a truck driver is not the same as loading shipments onto trucks. It is possible that with the benefit of discovery the Defendants will be able to establish that the Plaintiff performed duties that would bring him within the ambit of the MCA. However, the allegations in the First Amended Complaint do not establish that the Plaintiff's duties are similar to those that courts have found affect the safety of operation of motor vehicles. Therefore, mindful of the requirement that exemptions from the FLSA are to be

narrowly construed, the Court finds that the Defendants have not established that the Plaintiff is exempt from the FLSA.

### 4. Conclusion

Accordingly, the Court **grants in part and denies in part** the Defendants' Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, or, in the Alternative, Motion for Summary Judgment (**ECF No. 28**). The Court dismisses the allegations concerning enterprise coverage in the First Amended Complaint. However, the Plaintiff may proceed under a theory of individual coverage. The Court denies the Defendants' alternative motion for summary judgment.

**Done and ordered**, Miami, Florida, on January 16, 2018.

_____
Robert N. Scola, Jr.
United States District Judge