# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

### CASE NO.: 17-cv-23010-RNS

EDUARDO E. DIMINGO and all others
similarly situated under 29 U.S.C. 216(b),

    Plaintiff,

v.

MIDNIGHT XPRESS, INC.,
JR TRUCKS CORP.,
APR TRUCKING, INC.,
UNITED TRANSPORT LOGISTICS INC.,
YANEL MARTINEZ, SR.,
YANEL MARTINEZ, and
ANATELLA MARTINEZ,

    Defendants.

_____/

## DEFENDANTS' MOTION FOR FINAL SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants, MIDNIGHT XPRESS, INC. ("Midnight"), JR TRUCKS CORP. ("JR Trucks"), UNITED TRANSPORT LOGISTICS INC. ("United"), YANEL MARTINEZ ("Mr. Martinez"), and ANATELLA MARTINEZ ("Ms. Martinez") (hereinafter collectively referred to as "Defendants") by and through undersigned counsel, and pursuant to *D.E. 27, Fed. R. Civ. P. 56*, and *S.D. Fla. L.R. 56.1*, hereby file their Memorandum of Law in Support of Defendant's Motion for Final Summary Judgment, as follows:

    **I.**    **SUMMARY JUDGMENT**

        **a.**  **Standard of Review under *Fed. R. Civ. P. 56***

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact the moving party is entitled to a judgment as a matter of law. *See, e.g.,* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); *see, also,* Celotex Corp. v. Catrett, 477 U.S. 317,

322 (1986); *Fed. R. Civ. P. 56*. The purpose of a summary judgment motion is to isolate and terminate all claims that are factually unsupported. *See, e.g.,* Celotex Corp., 477 U.S. 317 (1986). Once a party has moved for summary judgment, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the pleadings and submit his own affidavits, depositions, answers to interrogatories, or admissions on file, to designate specific facts showing that there is a genuine issue for trial. *See, e.g.,* Celotex Corp., 477 U.S. at 324. A party defending against summary judgment has the burden of responding to evidence with "relevant and admissible evidence sufficient to rebut." *See, e.g.,* Gregory v. Quality Removal, Inc., 2014 WL 5494448 at *3 (S.D. Fla. 2014) *citing* Scott v. K.W. Max Investments, Inc., 256 Fed. Appx. 244, 247 (11th Cir. 2007). But issues of material fact cannot be created by conclusory allegations. *See, e.g.,* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A mere scintilla of evidence, self-supporting evidence, and evidence that is not admissible at trial is not enough to defeat summary judgment. *See, e.g.,* Anderson, 477 U.S. at 242. Moreover, where a subsequent affidavit is inconsistent with a prior sworn deposition, the Court shall disregard the affidavit. *See, e.g.,* Holley Equip. Co. v. Credit Alliance Corp., 821 F.2d 1531, 1537 (11th Cir. 1987).

## II. MEMORANDUM OF LAW

### a. FLSA Coverage

In order to be eligible for FLSA overtime [or minimum wage], an employee must first demonstrate that he or she is "covered" by the FLSA. *See, e.g.,* Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir. 2011). This Honorable Court has already dismissed all allegations concerning enterprise coverage and joint enterprise coverage with prejudice. *D.E. 32.* Accordingly, the only basis on which Plaintiff may establish subject matter jurisdiction before this Honorable Court is individual coverage.

#### i. Individual Coverage

To establish individual coverage, a plaintiff must demonstrate that he was:

(1) Engaged in commerce; or
(2) Engaged in the production of goods for commerce.

*See, e.g.,* Mederos v. Garcia, 2011 WL 13172947, at *3 (S.D. Fla. 2011) *citing* Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006).

2

The burden of proof lies on employees to establish that they were engaged in interstate commerce, or in the production of goods, and that such production was for interstate commerce. *See, e.g.,* Casseus v. First Eagle, LLC, 2008 WL 1782363, at *3 (S.D. Fla. 2008) *citing* Kitchings v. Florida United Methodist Children's Home, Inc., 393 F.Supp.2d 1282, 1292 n. 25 (M.D. Fla. 2005). To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer. *See, e.g.,* Casseus, 2008 WL 1782363, at *3 *citing* Mitchell v. Lublin McGaughy & Assocs., 358 U.S. 207, 211 (1959). A plaintiff must demonstrate that his participation in the actual movement of persons or goods in interstate commerce, was sufficiently substantial to support a finding of individual coverage under the FLSA. *Id.*

This Honorable Court has previously acknowledged that employees who guard premises and property used for interstate shipments are typically engaged in interstate commerce within the meaning of the FLSA. *D.E. 32 citing* Russell Co. v. McComb, 187 F.2d 524, 526 (5th Cir. 1951) (Night watchman who guarded the defendant's premises and property, including the interstate shipments loaded into freight cars and truck and a warehouse in which goods are prepared for interstate shipment, was covered by the FLSA). The Code of Federal Regulations further explains the application of individual coverage to "employees…. performing[ing] such work as watching or guarding ships or vehicles which are **regularly used** in commerce or maintaining, watching, or guarding warehouses, railroad, or equipment yards, where goods moving in interstate commerce are temporarily held." *29 C.F.R. § 776.11(b).* Indeed, a key factor in determining if a plaintiff engaged in commerce for purposes of individual coverage under the FLSA is whether such activities were a "regular and recurrent" part of plaintiff's employment duties. *See, e.g.,* Lopez v. Pereyra, 2010 WL 335638 at *5 (S.D. Fla. 2010) *citing 29 C.F.R. 776.10(b).* The employee's interstate activity **must** be regular and recurrent and not simply isolated or sporadic for jurisdiction to exist. *See, e.g.,* Dent v. Giaimo, 606 F.Supp.2d 1357, 1360 (S.D. Fla. 2009) *citing* Scott v. K.W. Max Investments, Inc., 256 Fed. Appx. 244, 247 (11th Cir. 2007). **Indirect or sporadic involvement in interstate commerce is insufficient to establish individual coverage under the FLSA**. *See, e.g.,* Perez v. New Auto Image Marketing, Inc., 2016 WL 7540272, at *5 (S.D. Fla. 2016) *citing* Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1316 (11th Cir. 2011); *see, also,* Perez v. Nwb Aspen, Inc., 2016 WL 5853734, at *3 (Employee's use of telephone to make interstate phone calls "a few times a month" does not establish individual coverage) (M.D.

Fla. 2016) *citing* May v. Jean Nichole Hair Salons, Inc., 2015 WL 4751202, at *2-3 (M.D. Fla. 2015) (Employee's simple use of the phone "once a week" on a sporadic basis does not constitute interstate commerce, even where these calls were made to schedule appointments with out of state customers); Gregory v. Quality Removal, Inc., 2014 WL 5494448, at *8 (S.D. Fla. 2014) ("Given the Eleventh Circuit's emphasis on regular and recurrent engagement in commerce, the ultimate question here is whether Plaintiffs' use of the airport was frequent enough to bring them within the FLSA's protections).

Here, Defendants do not contest that Plaintiff performed security services for a truck yard, including securing goods and products at the yard. *SUF ¶¶16-52*. However, the proper inquiry in determining the application of individual coverage is not the nature of the *employer's* business, but rather, the *employee's* participation. There is no evidence whatsoever to suggest that Plaintiff was involved in the "production of goods," and the only record testimony concerning the location and frequency of out-of-state shipments guarded by Plaintiff is as follows:

> […] we had customers in the Carolinas, in Georgia, but we'd go straight empty from here to there to pick up the freight and deliver it to California. It was not that often. From here to California? Not that often. Maybe once in a month. Maybe twice every three months.

*SUF ¶51-52*.

Mr. Martinez's testimony clearly establishes that Plaintiff's provision of security services were not "so closely related" to goods or materials "moving in interstate commerce on a **regular** and **recurrent** basis." *See, e.g.,* Perez, 2016 WL 5853734, at *2-3. At absolute best, the goods and materials guarded by Plaintiff moved in interstate commerce to one state (California) on a **sporadic basis of once a month**. *Id.; SUF ¶39, 51-52*. This is no different from the hairstylists from the Middle District of Florida cases above, who used an interstate instrumentality of commerce (i.e. the telephone) to sporadically make interstate communications once a week, or once a month, to salon customers for the purpose of scheduling appointments. *Id.* Accordingly, there is no individual coverage as a matter of law. The lack of individual coverage divests this Honorable Court of subject matter jurisdiction and judgment should be entered for Defendants immediately.

### b. Independent Contractor Status

Even if this Honorable Court does not grant Defendants summary judgment on the issue of individual coverage, Defendants are nevertheless entitled to summary judgment on other grounds. Although coverage under the FLSA is broad, it nevertheless has limits. *See, e.g.,* Brouwer v. Metropolitan Dade County, 139 F.3d 817, 819 (11th Cir. 1998) *citing* Tony & Susan Alamo Found. v. Secretary of Labor, 471 U.S. 290, 294-95 (1985). In order to prevail on an FLSA claim, a plaintiff must first demonstrate that there is an employment relationship between himself and the defendant. *See, e.g.,* Blake v. Batsmasian, 191 F.Supp.3d 1370, 1375 (S.D. Fla. 2016). Determination of employment status under the FLSA is a question of law and is based upon the "economic realities" of the situation. *See, e.g.,* Brouwer, 139 F.3d at 817 *citing* Vallarreal v. Woodham, 113 F.3d 202, 205 (11th Cir. 1997); *see, also,* Freund v. Hi-Tech Satellite, Inc., 185 Fed.Appx. 782 (S.D. Fla. 2006) *citing* Rutherford Food Corp. v. McComb, 331 U.S. 722, 728 (1947). The FLSA only creates a private right of action against any "employer" who violates the overtime provisions. *See, e.g.,* Mirabal v. Metro Parking Corp., 2016 WL 9455606 at *2 (S.D. Fla. 2016) *citing 29 U.S.C. 216(b).* A plaintiff's mere claim that he is an "employee" is a legal conclusion that the Court is not bound to accept as true. *See, e.g.,* Freeman v. Key Largo Volunteer Fire and Rescue Dept., Inc., 494 Fed.Appx. 940, 944 n. 2 (11th Cir. 2012) *citing* Twombly, 550 U.S. at 555.

The broad definition of "employee" under the FLSA does not include "independent contractors." *See, e.g.,* Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311 (11th Cir. 2013). However, merely putting the label of "independent contractor" on an employee does not take the worker from the protection of the FLSA. *Id. citing* Rutherford Food Corp. v. McComb, 331 U.S. 722, 729 (1947). To determine whether an individual falls into the category of covered "employee" or exempted "independent contractor," courts look to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship truly demonstrates dependence. *See, e.g.,* Bartels v. Birmingham, 332 U.S. 126, 130 (1947) ("Employees are those who as a matter of economic reality are dependent upon the business to which they render service"). In order to determine independent contractor status, courts consider the following six (6) factors:

(1) The nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

> (2) The alleged employee's opportunity for profit or loss depending upon his managerial skill;
> (3) The alleged employee's investment in equipment or materials required for his task, or his employment or workers;
> (4) Whether the service rendered requires a special skill;
> (5) The degree of permanency and duration of the working relationship; and
> (6) The extent to which the service rendered is an integral part of the alleged employer's business.

*See, e.g.,* Scantland, 721 F.3d at 1312.

While these factors serve as guides, the overarching focus on the inquiry is economic dependence. *See, e.g.,* Quarles v. Hamler, 652 Fed.Appx. 792 (11th Cir. 2016) *citing* Scantland, 721 F.3d at 1312. In considering economic dependence, the court focuses on whether an individual is "in business for himself" or is "dependent upon finding employment in the business of others." *See, e.g.,* Scantland, 721 F.3d at 1312 *citing* Mednick v. Albert Enters., Inc., 508 F.2d 297, 301-02 (5th Cir. 1975). Additionally, "the label attached to the relationship is dispositive only to the degree that it mirrors the economic reality of the relationship." *See, e.g.,* Shaw v. Set Enterprises, Inc., 2017 WL 1380774 at *3 (S.D. Fla. 2017) *citing* Harrell v. Diamond A Entm't, Inc., 992 F.Supp. 1343, 1353 (M.D. Fla. 1997).

> **i.     None of these Defendants Maintained Any Authority or Control Over the Provision of the Security Services Performed by Plaintiff**

Mr. Martinez never went to the truck yard when Plaintiff was providing security services, never provided Plaintiff with any instruction whatsoever as to how Plaintiff was to provide these security services and was often be out of the country traveling when Plaintiff was tasked with providing these security services. *SUF ¶22, 24, 27, 29.* Plaintiff hired his own employees and assigned these individuals the task of providing these security services. *SUF ¶23.* Defendants never performed any background checks on the individuals Plaintiff hired, never exercised any authority or control over Plaintiff or his employees, and never questioned how many people Plaintiff would bring to provide the security services. *SUF ¶25.* Mr. Martinez's **only** concern was that the security service be provided as agreed to between himself and the Plaintiff. *SUF ¶13-20.* Defendants never disciplined Plaintiff, never supervised Plaintiff's work, and never otherwise controlled any other aspect of how these security services were provided. *SUF ¶22, 23, 24, 25, 27, 29.* This factor heavily supports a finding of independent contractor status.

6

### ii. **Plaintiff Very Clearly Controlled his Opportunity for Profit by Hiring Other Individuals to Perform the Security Services**

Plaintiff admits that he hired his own employees to perform these security services. *SUF ¶23, 25, 26, 67, 68, 69.* It is therefore incomprehensible how Plaintiff could ever claim employee status (or file this lawsuit claiming unpaid overtime wages under the FLSA). Plaintiff's hiring of his own employees clearly provided Plaintiff the opportunity to further his profits. Plaintiff hired at least five to six individuals during this time period, paid them $10.00 per hour, and was free to pursue other work while his employees performed the security services for Defendants. *SUF ¶23, 67, 68, 69, 70, 73.* Yet, Plaintiff somehow nevertheless claims entitlement to overtime hours he very clearly did not even work. Plaintiff admits that he was free to pursue other work from Monday through Friday. *SUF ¶47.* Plaintiff was compensated *at least* one thousand dollars ($1,000.00) per week during all time periods alleged in his First Amended Complaint (but did not report this income to the IRS). *SUF ¶37, 53-73.* Plaintiff would use this compensation to pay the employees he hired. *SUF ¶70, 73.* In 2015 alone, Plaintiff was compensated at least $27,000.00, yet testified to paying his own employees $16,000.00 from this compensation. *SUF ¶66.* In 2016 alone, Plaintiff was compensated at least $25,000.00 and testified to paying his own employees nearly $15,000.00.[1] *SUF ¶71-72.* This factor *overwhelmingly* supports finding that Plaintiff was an independent contractor.

### iii. **All Equipment and Materials were Provided by Plaintiff**

Plaintiff provided his own uniform, his own firearm (a 9mm handgun), his own security license, and any equipment necessary to perform the security services he offered. *SUF ¶¶30-33.* Plaintiff even deducted the costs for these items on his tax return. *SUF ¶60.* Plaintiff also provided his own security badge, which he displayed and made visible at all times while providing security services. *SUF ¶¶30-33.* Defendants did not provide Plaintiff any materials whatsoever that were necessary to perform these security duties during any time period alleged within Plaintiff's First Amended Complaint. *SUF ¶33.* This factor further demonstrates that Plaintiff was not dependent on Defendants, and warrants finding that Plaintiff was an independent contractor.

---

[1] In other words, Plaintiff's employees worked far more than he ever did at the yard.

### iv.     **Defendants Relied Upon Plaintiff's Skill and Other Qualifications**

In addition to the fact that Plaintiff hired his own employees, paid his own employees, and provided all of his own equipment and materials, further justification warrants finding that Plaintiff was an independent contractor. Defendants never sought security services from any other entity or individual other than Plaintiff. *SUF ¶36.* This is because Mr. Martinez relied upon Plaintiff's prior vast experience in security services. *SUF ¶¶13-16.* Plaintiff previously provided services for at least five (5) other security companies before gathering his own employees to offer these services to Defendants. *SUF ¶13.* This allowed Plaintiff to use his own decision-making authority and independent discretion to provide the necessary security services at the yard. *SUF ¶16.* Plaintiff's services and skill had a significant impact on the business operation of the Defendant corporations, and his licensure through the State of Florida further supports finding that Defendants were dependent upon Plaintiff's qualifications. *SUF ¶20, 34, 35, 40, 41, 42, 43, 45, 46, 74-78.* Accordingly, Defendants' reliance upon Plaintiff's skill and qualifications weigh in favor of finding that Plaintiff was an independent contractor.

### v.     **Degree of Permanency and Working Relationship**

In the Eleventh Circuit, the central focus on the determination of independent contractor status is whether the working relationship demonstrates that the individual is in business for himself or is dependent upon finding employment in the business of others. *See, e.g.,* Quarles, 652 Fed.Appx. at 794 (No independent contractor status where employer *specifically told* personal security guard that the guard was to only work for him and no one else). The following factors demonstrate that Plaintiff is in business for himself: (i) his tax documents reflect that he reported income as a sole proprietor; (ii) Plaintiff hired other individuals to provide these services for Defendants; (iii) Plaintiff paid these individuals $10.00 per hour; (iv) Plaintiff was not subject to disciplinary action from Defendants; and (v) Plaintiff could take vacation, and pursue other work whenever he wanted, so long as the security services were still provided to Defendants. *SUF ¶¶22, 23, 24, 25, 26, 27, 29, 53-73, 67-69.*

### vi.     **Security Services Rendered by Plaintiff Were an Integral Part of Defendants' Business**

Mr. Martinez initially sought out a company to provide security services because millions of dollars of property needed safekeeping and guarding at the yard throughout the night and

8

weekends. *SUF ¶40, 42-47*. Accordingly, the security services rendered by Plaintiff were an integral part of Defendants' business. *SUF ¶40*. This, of course, is only one factor for the Court to consider, and when considering the totality of other factors, this one factor does not, by itself, suggest that there was an employment relationship between Plaintiff and Defendants. To the contrary, the totality of the circumstances surrounding the economic realities of the services rendered by Plaintiff clearly demonstrate that Plaintiff was always an independent contractor.

### c. **Plaintiff's Particular Security License under *Fla. Stat. § 493.6301(4)* Precludes this Honorable Court from Finding that Plaintiff is an Employee**

During all times pertinent to allegations within Plaintiff's First Amended Complaint, Plaintiff claims to have held a Class "D" Security License in the State of Florida, and further claims he was **always** armed with a 9mm handgun every single time he performed security services for Defendants. The licensing of security services in the State of Florida is regulated under Chapter 493. Pursuant to *Fla. Stat. § 493.6301(5)*:

> Any individual who performs the services of a security officer shall have a Class "D" license.

*Id.*

But *Fla. Stat. 493.6301(4)* states as follows*:*

> **A Class "D" Licensee shall own or be an employee of a Class "B" security agency or branch office**. This does not include those individuals who are exempt under *Fla. Stat. 493.6102(4)* but who possess a Class "D" license solely for the purpose of holding a Class "G" license.

*Id.*

A security officer is only exempt from the requirements above under *Fla. Stat. § 493.6102(4)* if the officer is:

> Any **unarmed** individual engaged in security services who is employed exclusively to work on the premises of her or his employer, or in connection with the business of her or his employer, when there exists an employer-employee relationship.

*Id.*

Plaintiff procured a Class D security license from the State of Florida. Yet, Plaintiff, by his own admission, **always carried a firearm**, and therefore was never entitled to the exemption

9

cited above. *SUF ¶74-78.* Accordingly, under Florida law, Plaintiff could have *only* held his Class "D" License if he also (i) owned; or (ii) was an employee of a Class "B" security agency or branch office. None of these Defendants are ever alleged to be security agencies anywhere within Plaintiff's First Amended Complaint (because they are not). No evidence could ever prove such a claim. Accordingly, by process of elimination, the **only** possible way Plaintiff could have procured his Class "D" license is if he owned his own security agency. This, of course, negates any contention whatsoever that Plaintiff is (or ever was) an employee of any of these Defendants, and overwhelmingly supports Defendants' position that Plaintiff was an independent contractor. Defendants are entitled to summary judgment immediately.

### d. Plaintiff's Tax Returns Destroy his Credibility

No current case law expressly bars a plaintiff's recovery under the FLSA for mere failure to properly pay federal income taxes under the *in pari delicto* defense. *See, e.g.,* Martinez-Pinillos v. Air Flow Filters, Inc., 738 F.Supp.2d 1268, 1276 n. 8 (S.D. Fla. 2010) (Court has not found any support to defendant's argument that a plaintiff's failure to pay federal income taxes requires summary judgment for defendnats); Barrera v. Weiss & Woolrich S. Enters. Inc., 09-cv-21841, ECF No. 131 at *4 (S.D. Fla. 2010) (There is no case law that requires summary judgment for defendants when a plaintiff fails to fail federal income tax). However, while Plaintiff's failure to report a significant amount of compensation on his tax returns is not an express bar to recovery under the FLSA, the (sworn) tax returns are nevertheless revealing on issues concerning Plaintiff's credibility (or lack thereof) and the payment Plaintiff made to his employees for services **they performed**, but for which Plaintiff now attempts to recover overtime. *SUF ¶¶53-73.*

### e. Exemption Under the FLSA

Even if this Honorable Court determines that Plaintiff is an employee (which he most respectfully is not) or otherwise determines that an issue of fact exists as to whether Plaintiff is (or is not) an employee, this Plaintiff is nevertheless categorically exempt from the overtime provisions under the FLSA.

#### i. Administrative Exemption

Employees fall under the administrative exemption from the overtime requirement if they:

(1) receive a salary or fee at a rate of $455 per week or more;
(2) are primarily employed in office or non-manual work directly related to his employer's general business operations or customers; and

> (3) exercise discretion and independent judgment with respect to matters of significance, as his primary duty.

*See, e.g.,* Juback v. Radioshack Corp., 2009 WL 1259990, at *2 (M.D. Fla. 2009) *citing 29 C.F.R. § 541.200(a).*

Here, there is no dispute that Plaintiff was always compensated at least one thousand dollars ($1,000.00) per week.  Accordingly, the first prong for exemption is satisfied, and the only issue to address is Plaintiff's primary duty and his use of independent decision-making authority in furtherance thereof.  One's primary duty is defined as the "principal, main, major, or most important duty," when analyzed in light of all the facts, such as the "relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  *Id.*  If an employee spends more than fifty percent (50%) of his time performing exempt work, he will generally be considered exempt from the overtime requirement.  *Id. citing 29 C.F.R. § 541.700(b).*

The exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  *See, e.g.,* Radioshack Corp., 2009 WL 1259990, at *2 *citing 29 C.F.R. 541.202(a).*  Such exercise means that "the employee has authority to make an independent choice, free from immediate direction or supervision… even if his decisions or recommendations are reviewed at a higher level."  *Id. citing 29 C.F.R. § 541.202(c).*  Factors to consider in determining whether an employee exercises independent judgment and discretion include:

> [W]hether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or

> expert advice to management; whether the employee is involved in planning long or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*See, e.g.,* Ferrell v. Gwinnett County Bd. of Educ., 481 F.Supp.2d 1338, 1348 (S.D. Ga. 2007) *citing 29 C.F.R. § 541.202(b).*

In Radioshack Corp., 2009 WL 1259990 at *3, a court sitting in the Middle District of Florida held that a loss prevention officer was exempt from FLSA coverage. *Id.* More specifically, the court determined that reducing potential theft and/or loss of property as one's primary duty required the use of independent judgment, evaluation of possible courses of action, and decision-making after considering those various possibilities. *Id.* Notably, in choosing how the execute his job responsibilities, the plaintiff was required to make an independent choice, free from immediate direction or supervision. *Id.* The plaintiff claimed that theft was a very important matter to his employer. *Id.* Accordingly, plaintiff was involved in investigating and resolving matters of significance on behalf of the employer. *Id.* Furthermore, the plaintiff's work reduced the potential loss of hundreds of thousands of dollars to the company, and plaintiff was therefore engaged in the performance of work that affected business operations to a substantial degree. *Id.*[2]

In Ferrell, 481 F.Supp.2d at 1346, the court held that school resource officers qualified for the administrative exemption. *Id.* There, the court recognized that police officers ordinarily do not qualify for exemption under the FLSA, because "their primary duty is not the performance of work directly related to the management or general business operations of the employer or employer's customers." *Id.* However, the court identified a critical distinction between police officers who work for a law enforcement agency and school resource officers, who were employed by the school system, due to the difference in the nature of their respective employers' businesses. *Id. quoting* Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 903 (3rd Cir. 1991) ("It is important to consider the nature of the employer's business when deciding whether an employee is an

---

[2] In Radioshack Corp., 2009 WL 1259990, at *3, Judge Buckelew's opinion also cites to an opinion issued by the Department of Labor, in which the DOL found that an individual tasked with loss prevention duties typically meets administrative overtime exemption under the FLSA. *Id.* The DOL specifically noted that an individual's effect on a company's profitability, as well as the individual's role in investigating and preventing loss constituted the exercise of independent judgment and discretion on matters of significance contemplated under the exemption. *Id.*

administrative or production worker"). Furthermore, the court compared the school resource officers to United States postal inspectors, a class of workers whom the DOL has determined are exempt from overtime coverage.[3] *Id.* at 1347. More specifically, the court found that postal inspectors, like school resource officers, carry firearms, make arrests, serve warrants, and investigate possible crime. *Id.* Postal inspectors are not in the business of fighting crime, but rather, provide a safety and security function related to the mission of delivering the mail. *Id.* Most notably, in reaching its decision, the court reasoned that the school system could not achieve its goal of educating students unless the school environment is safe and secure. *Id.* The school resource officers work directly affected the school system's safety policies, thereby satisfying the requirement of performing work that is directly related to the management or general business operations of one's employer. *Id. citing* Bosch, 2005 WL 357411, at *6; White, 956 F.Supp. at 1170.

Here, it is **uncontested** that Plaintiff's primary and most important duty and responsibility was to provide security services at the yard to protect millions of dollars of equipment and goods located there. *SUF ¶20-22, 34-35, 40-46*. Plaintiff was always free from direct supervision. *SUF ¶27*. In fact, Mr. Martinez was often out of the country and unavailable. Even if Plaintiff's decisions or recommendations were reviewed by a higher authority (i.e. Mr. Martinez), this is not sufficient for Plaintiff to overcome exemption. *See, e.g.,* Bagwell v. Florida Broadband, LLC, 385 F.Supp.2d 1316 (2005) *citing* Dymond, 670 F.2d 93 (8th Cir. 1982). Additionally, Plaintiff avoided and reduced unnecessary damage to very valuable property and goods, locked up tractors and trailers, supervised operations of the yard, prohibited unlawful entry into the yard, and otherwise secured the premises and reduced theft of extremely valuable property. *SUF ¶21, 40-46*. Plaintiff always carried a firearm, was free from any direct supervision by Defendants, and exercised his own independent judgment in preventing crime, conducting investigations, and reducing potential theft. Plaintiff was tasked with guarding trucks, property, goods, and equipment that was collectively valued in excess of four million dollars ($4,000,000.00). *SUF ¶20-22, 34-35, 40-46*. According to Mr. Martinez, Plaintiff's security services undoubtedly had a significant impact on

---

[3] *See, e.g.,* Dymond, 670 F.2d at 95 (Postal inspectors exercise independent judgment and discretion because they make "unsupervised recommendations on security and safety matters, and determine when a situation requires immediate action); Auer, 65 F.3d at 720-21 (Officers who are hired because they can "think on their feet," who are relatively free from supervision in performing their duties, and have authority to decide whether to initiate investigations).

the business operation of the Defendant corporations, and Plaintiff, while not a loss prevention officer, school resource officer, or postal inspector, *per se*, still nevertheless exercised independent judgment on matters of significance for Defendants, and was tasked with the safe-keeping of goods collectively valued at over $4,000,000.00, such that he is exempt from the overtime requirements under the FLSA.  *SUF ¶40, 43, 46.*

### ii. Executive Exemption

A person who meets the salary threshold for exemption, and whose primary duty is the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and whose primary duty includes the customary and regular direction of at least two (2) or more other employees therein is subject to executive exemption under the FLSA. *29 C.F.R. § 541.1.*  The term "management" under the Code of Federal Regulations provides examples of managerial duties, as follows: supervisions of employees; interviewing and selecting employees; setting and adjusting work schedules and pay rates; directing work; planning work; providing safety for workers and safety for property.  *Id.*

If Plaintiff hired and paid other individuals to perform security services (as he has testified under oath), then there is overwhelming support that Plaintiff is an independent contractor.  But on the other hand, if Plaintiff takes the position that these other individuals were not his employees (and are somehow Defendants' employees – which they are not), the Plaintiff has still testified under oath that **he** selected these multiple individuals, **he** determined their pay rate at $10.00 per hour, and **he** determined their work schedules, such that he should be categorically exempt from the overtime requirement under the FLSA's executive exemption. *SUF ¶23, 24, 25, 35, 66-70, 72.*

### iii. Combination Exemption

A person who performs a combination of exempt work may tack on the work he performs, so long as the non-exempt work he performs does not exceed 20 percent of the total work he performs in any given workweek.  *29 C.F.R. § 541.600.*  Work that is "exempt" under one section of the regulations will not defeat the exemption under any other section.  *Id.*  Here, Plaintiff has provided sworn testimony that majority of the work he performed involved guarding trucks, freight cargo, and the premises.  *SUF ¶20-21.*  Accordingly, the combination exemption applies to preclude Plaintiff from any entitlement to overtime under the FLSA.

### f. Individual Liability for Anatella Martinez

To support individual employer liability under the FLSA, there must be control over "significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to an employee." *See, e.g.,* Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2008). The Eleventh Circuit Court of Appeals has also recognized that "the overwhelming weight of authority is that a corporate officer with **operational control of a corporation's covered enterprise** is an employer along with the corporation, jointly and severally under the FLSA for unpaid wages." *See, e.g.,* Davison v. Amigos Tacqueria LLC, 2013 WL 12131317 at *2 *citing* Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986).[4] However, for an officer to have operational control, she "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Id.; see, also,* Torres v. Rock & River Food, Inc., 244 F.Supp.3d 1320, 1332 (S.D. Fla. 2016) (operational control means management of the day-to-day business functions such as employee compensation, direct responsibility for the supervision of employees, or general operations) *citing* Baltzley v. Berkley Grp., Inc., 2010 WL 505104, at *2 (S.D. Fla. 2010). Relevant control for purposes of individual liability is control in relation to the employee-plaintiff. *See, e.g.,* Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299 (11th Cir. 2013). Control need not be continuous, but it **must** be both substantial and related to the company's FLSA obligations. *Id.*

Here, Ms. Martinez had no ownership interest in any of the corporate Defendants named in this lawsuit. *SUF ¶¶85-103.* Ms. Martinez had no hiring authority, no firing authority, or any other authority over *any* individual at yard, and never had *any* authority concerning the pay rates of any such individuals or the pay practices of the Corporate Defendants. *SUF ¶¶85-103.* Likewise, Ms. Martinez never assisted her brother, Mr. Martinez, with ***any*** decision-making for the Corporate Defendants. *SUF ¶¶85-103.* Ms. Martinez never had any conversations with Plaintiff concerning his pay rate, never had conversations regarding Plaintiff's work schedule, and there is no record evidence whatsoever that Ms. Martinez ever signed any paycheck for this

---

[4] In Wargo, 803 F.2d at 638, the Eleventh Circuit held that the individual defendant, who was both the president and vice-president of the company, as well as a director and principal stockholder was not an employer under the FLSA because the defendant did not have "operational control of significant aspects of the company's day-to-day functions, including compensation of employees or other matters in relation to employees. *Id.* The inquiry focuses on the actual role the defendant played in the company; not the theoretical role defendant *could* have played. *Id.*

Plaintiff.  *SUF ¶¶85-103*.  There is very simply no evidence whatsoever that Ms. Martinez ever had any substantial day-to-day control over any of these Corporate Defendants.  **In fact, the only reason Plaintiff named Ms. Martinez in this lawsuit is because her desk is near Mr. Martinez**. *SUF ¶103*.  There was no investigation made into Ms. Martinez's involvement in this case, and there is no reason for Ms. Martinez to have ever been named as an individual Defendant.  It is all the more troubling that Plaintiff and his counsel have been on notice of the complete dearth of evidence against Ms. Martinez for months, and yet, Plaintiff continues to pursue these frivolous claims against Ms. Martinez without any good-faith basis.  Ms. Martinez is entitled to summary judgment and should be permitted the opportunity to recover her attorney's fees and costs incurred in this case.

### g. Successor Liability

The rationale behind the extension of successor liability under the FLSA is to prevent labor unrest or to protect workers' rights.  *See, e.g.*, Cuervo v. Airport Services, Inc., 984 F.Supp.2d 1333, 1337 (S.D. Fla. 2013).  The Eleventh Circuit has applied federal successor liability law to FLSA cases. *See, e.g.*, Martinez v. Nido Caffe 110 LLC, 2017 WL 5508530 at *2 (S.D. Fla. 2017).  The successor liability determination "must be conducted in light of the facts of each case and the particular legal obligation at issue." *Id.*  The Eleventh Circuit Court of Appeals requires a demonstration of the following factors in order to establish successor liability in an FLSA suit:

   i. The successor had notice of the pending action;
   ii. The predecessor would have been able to provide the relief sought in the action before the sale;
   iii. The predecessor could have provided the relief after the sale;
   iv. The successor can provide the relief sought in the action; and
   v. There is continuity between the operations and work force of the predecessor and the successor.

*See, e.g.*, Martinez, 2017 WL 5508530 at *2.

To be sure, successor liability does not alleviate a plaintiff's requirement to sufficiently plead FLSA coverage, and a plaintiff's failure to allege that a successor entity was aware of FLSA violations at the time they purchased the predecessor corporation requires dismissal.  *Id.*  Likewise, failure to allege that a predecessor was not able to provide the relief requested also requires dismissal. *Id. citing* Boateng v. Retirement Corp. of America Partners, L.P., 2013 WL 12061901, at *4-5 (N.D. Ga. 2013) (dismissing complaint because plaintiff failed to allege that the successor corporations were aware of any potential claims for FLSA violations at the time they purchased

the predecessor corporation and failed to allege that the predecessor was not able to provide the relief requested).

To date, this Honorable Court has not issued any ruling on successor liability. Within his First Amended Complaint, Plaintiff alleges the following basis for successor liability against the corporate Defendants:

> This Court also has jurisdiction to continue to hear this case under the theory of successor liability pursuant to *Steinbach v. Hubbard*, 51 F.3d 843, 844 (9th Cir. Wash. 1995) (Successorship liability exists under the Fair Labor Standards Act). Based on Division of Corporation Records, Defendants point out that JR TRUCKS CORP became effectively incorporated on 3/10/15 and was dissolved 3/14/17; and UNITED TRANSPORT LOGISTICS, INC. became effectively incorporated 4/23/17. It is believed that when they were incorporated, JR TRUCKS CORP and UNITED TRANSPORT LOGISTICS, INC. were mere successor companies, created to operate as mere continuations of their predecessors, that had the same management, same ownership, same business module, same employees, and same equipment. It is believe that Defendants created JR TRUCKS CORP and UNITED TRANSPORT LOGISTICS, INC. as an attempt to avoid the liabilities as successor corporations, and were created as "mere continuations" of the predecessor corporations. Plaintiff intends to conduct full discovery on this issues as to all of the Defendants, as Plaintiff, during his entire employment did the same job, at the same location, while Defendants carried on the same type of business. The only thing that changed, was the corporate name reflected on Plaintiff's paystub.

*D.E. 26, ¶21.*

There are very clearly no allegations whatsoever that come even remotely close to satisfying any of the elements for successor liability. *SUF ¶1.* Plaintiff's First Amended Complaint appears to claim that United is a successor of JR Trucks, but the First Amended Complaint is devoid of any allegations concerning United's *knowledge* of any liabilities owed to Plaintiff, or that JR Trucks could have provided relief *before* the sale, or that United could have provided relief *after* any such sale. *SUF ¶1.* Likewise, Plaintiff failed to take any discovery whatsoever on **any** of these issues. There is no record evidence whatsoever that could support any basis for successor liability in this case, and Defendants are entitled to summary judgment on this issue.

17

       **h. Joint Employer Liability**

The Eleventh Circuit examines a list of eight (8) factors in determining whether employers are joint employers under the FLSA:

    (i)     The nature and degree of control of the workers;
    (ii)    The degree of supervision, direct or indirect, of the work;
    (iii)   The power to determine the pay rate of the methods of payment of the workers;
    (iv)   The right, directly or indirectly, to hire, fire, or modify the employment condition of the workers;
    (v)    Preparation of payroll and payment of wages;
    (vi)   Ownership of the facilities where the work occurred;
    (vii)   Performance of a specialty job integral to the business; and
    (viii)  Investment in equipment and facilities.

*See, e.g.,* Hankerson v. Fort Lauderdale Scrap, Inc., 2016 WL 7508242, at *3 (S.D. Fla. 2016) *citing* Layton v. DHL Exp. (USA), Inc., 686 F.3d 1172, 1175-77 (11th Cir. 2012).

Here, Plaintiff alleges that Mr. Martinez, Ms. Martinez, Midnight, JR Trucks, United, and APR are all his joint employers under the FLSA. *D.E. 26.* However, record evidence demonstrates that Ms. Martinez had no power over the methods of payment, modification of employment conditions, or any supervision (direct or indirect) of any work performed by Plaintiff. *SUF ¶¶85-103.* Record evidence further demonstrates that neither Mr. Martinez nor Ms. Martinez ever had any ownership over United, and in any event, United never directed or controlled anything work or services offered by Plaintiff. *SUF ¶¶79-84.* There is likewise no record evidence whatsoever as to Mr. Martinez, Ms. Martinez, Midnight, JR Trucks, United, or APR actually owning the facility where Plaintiff provided security services.

### III.    CONCLUSION

This case has exhausted judicial resources and has required these Defendants to needlessly incur significant expense to defend against these meritless claims. A careful review of the record before this Honorable Court demonstrates that this Plaintiff: (i) failed to allege a cause of action in his initial Complaint; (ii) failed to allege enterprise coverage in his First Amended Complaint; (iii) failed to allege joint enterprise coverage in his First Amended Complaint; (iii) refused to concede his failure to allege enterprise coverage; and (iv) has now failed to demonstrate how he could ever be awarded any relief whatsoever under the FLSA. This Plaintiff was always an independent contractor. Plaintiff knew this and his counsel *should have known this,* by virtue of the fact that Plaintiff hired his own employees to perform security services at the yard, paid these

employees $10.00 an hour, provided his own materials and equipment, held a Class "D" security license which requires him to own his own business, was free from direct supervision, and was never subject to any disciplinary action whatsoever. Plaintiff nevertheless filed this lawsuit against these Defendants – none of whom he had any good-faith basis to name as an "employer" – seeking overtime pay for hours that he paid other individuals to work!  Furthermore, it is abundantly clear that the mere proximity of one's desk (to the company owner's desk) does not, by itself, make such individual an employer.  Defendants are entitled to immediate judgment as a matter of law.  This Honorable Court's first Order of Dismissal [D.E. 24] warned Plaintiff and his counsel to strictly adhere to the strict requirements of Rule 11.  They have not.[5]  After consideration of these summary judgment motions, this Honorable Court should sanction Plaintiff and his counsel, and allow Defendants to pursue full recovery of their attorney's fees in this case.  There very clearly was **never** any good-faith basis for this lawsuit to have ever been filed against any of these Defendants.

WHEREFORE, for the reasons set forth herein, Defendants, MIDNIGHT XPRESS, INC., JR TRUCKS CORP., APR TRUCKING, INC., UNITED TRANSPORT LOGISTICS, INC., YANEL MARTINEZ, and ANATELLA MARTINEZ, respectfully request that this Honorable Court enter an order: (a) dismissing Plaintiff's Complaint with prejudice; and (b) entering any and all such further relief as is deemed just and equitable under the circumstances.

**Dated this 23rd day of March, 2018.**

Respectfully Submitted,

**JORDAN RICHARDS, PLLC**
401 E. Las Olas Blvd. Suite 1400
Fort Lauderdale, Florida 33301
(954) 871-0050
*Counsel for Defendants*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
jordan@FLSAfirm.com
jordan@jordanrichardslaw.com
livia@jordanrichardspllc.com

---

[5] Earlier today, over seven (7) months after naming Ms. Martinez as a party Defendant in this lawsuit (for having a desk that is close to Mr. Martinez), Plaintiff sought to dismiss Ms. Martinez from this case.  Of course, Plaintiff could have dismissed this frivolous lawsuit in its entirety.  But he did not.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing motion was served on all parties listed below via the CM/ECF on March 23, 2018.

                                                */s/ Jordan Richards, Esq.*
                                                JORDAN RICHARDS, ESQUIRE
                                                Florida Bar No. 108372

## SERVICE LIST:

**J.H. ZIDELL, ESQUIRE**
Florida Bar No. 0010121
*zabogado@aol.com*
**K. DAVID KELLY, ESQUIRE**
Florida Bar No. 0123870
*David.kelly38@rocketmail.com*
J.H. ZIDELL, P.A.
300 71st Street, Suite 605
Miami Beach, Florida 33141
Tel: (305) 865-6766
Fax: (305) 865-7167
*Attorneys for Plaintiff*